McNaughton vs. Thayer, impleaded &c.

A party who, as a subsequent purchaser of a part of mortgaged premises, has been made defendant to an action to foreclose the mortgage, and has been served only with a summons and notice of the nature of the action, is not bound by a finding of facts in the trial of an issue made by the answer of another defendant, by which the mortgage was sought to be reformed so as to cover a different piece of land, in which the first named party has also an interest.

Where a finding of law and a judgment directing that the mortgage be reformed as prayed for in such answer, and also directing a foreclosure and sale of the premises covered by the mortgage *when so reformed,* had been set aside on petition of the defendant adversely interested, and the plaintiff had moved for a new finding of law and judgment similar to those set aside, based upon the same finding of facts, the record states that "the motion was then and there, by stipulation of the defendants and each and all of them, argued by the counsel for the respective parties." *Held,* that this must be regarded as a stipulation that the motion might be brought on for argument at that time, and not as a waiver, by the defendant adversely interested, of her right to have a trial of the facts.

APPEAL from the Circuit Court for *Rock* County.

Action commenced March 6, 1860, to foreclose a mortgage on part of lot 1, block 12, in the city of Janesville. The lot appears from the evidence to be eight rods square, and to be on the east corner of the block, fronting to the N. E. on East street, and on the S. E. on South Second street. The mortgage was executed by the defendant *May* on the 19th of March, 1850, and recorded on the 15th of May following. The complaint describes the mortgage as upon the *south-west* half of the lot. J. C. Cary, A. W. Cary, Seth H. Marquisee, *William H. Ashcraft, Annie E. Thayer* and others were made defendants as claiming some interest subsequent to the mortgage, and a notice of the object of the action, and of no personal *claim* against ther, was served on said *Annie E. Thayer*, March 15, 1860. In October following, *Ashcraft* answered, alleging that on said 19th of March, 1850, the defendant *May* was owner in fee of the whole of said lot 1; that on the 25th of May of the same year, he sold and conveyed (by deed recorded June 1, 1860) to J. C. Cary a portion of the north-west part of said lot, fronting

three rods on East street, and six rods deep; that in October, 1850, he sold and conveyed (by deed recorded in the same month) to A. W. Cary, another portion of said lot, immediately adjoining the former, also fronting three rods on East street, and six rods deep; that in January, 1853, he sold and conveyed (by deed recorded May 16, 1853) to Seth H Marquisee, another portion of said lot, immediately adjoining the one last described, fronting two rods on East street and six rods on South Second street, and that the defendant *Annie E. Thayer* was seized of this piece in her own right, at the date of said answer, having derived her title from said Marquisee subsequently to said 16th of May, 1853; that on the 24th of April, 1856, said Marquisee was seized in fee of the remainder of said lot 1, not above described as conveyed by *May*, (to wit, a piece fronting two rods on South Second street, eight rods deep, and bounded on one side by the south-west line of said lot), and that on that day he conveyed the same by warranty deed to the defendant *Ashcraft.* The answer further alleges that the mortgage in suit contained, immediately following the description of the mortgaged premises as set forth in the complaint, the following words: " said lands conveyed being four rods wide and eight rods deep, and including the dwelling house occupied by Patrick Burns and Moses Buckley;" that at the time of the execution of said mortgage, a mistake occurred in describing therein the premises intended to be mortgaged; that *May* intended by said mortgage to convey to the plaintiff, and the plaintiff intended to take as his security for the payment of the sum mentioned in the complaint, the *southeast* half of said lot, and no other lands; that the mistake was not discovered by the said defendant *Ashcraft* until about the time of the commencement of this action; that the defendants J. C. and A. W. Cary, and *Annie W. Thayer*, at the time they took their several conveyances, as above stated, had due notice of said mistake; and that the mortgage, by reason of said mistake, was a cloud upon said *Ashcraft's* title to the premises

held by him. The answer therefore demanded that the mortgage be reformed in accordance with the facts so alleged, &c.

On the 14th of February, 1861, "the issue made by said complaint and answer" was tried; and "after hearing the proofs of the plaintiff and of the defendant *Ashcraft*, and the arguments of their respective counsel," the court found, as a matter of fact, "among other things," that there was a mistake made at the time of the execution of said mortgage, in the description of the premises mentioned therein, and that the parties intended that said description should be ' the *north-west* half,' instead of ' the *south-west* half' of said lot. As conclusions of law, the court found that the "defendants" were entitled to have the description of the premises in said mortgage reformed in accordance with the facts as above found, and that the plaintiff was entitled to a judgment of foreclosure and sale of the premises as described in the mortgage when so reformed, to make an amount adjudged to be due him upon the mortgage. Judgment was rendered accordingly. On the 13th of June, 1861, the court, upon an affidavit made on the part of J. C. and A. W. Cary, and upon the pleadings, &c., made an order setting aside " the finding " in the action, granting a new trial, and continuing the cause. The bill of exceptions states that on the 25th of January, 1862, "said issue came on to trial and hearing," and " the testimony introduced on said trial and hearing is as follows, to wit: The plaintiff offered in evidence the note and mortgage mentioned in the complaint, and admitted by the answer. Charles G. Williams, a witness for the plaintiff, testified as follows : ' I have computed the amount due on the note and mortgage in this action, and find that there is now due on said note and mortgage the sum of $321.81. The mortgaged premises consist of two lots, and can be sold separately. The note and mortgage were left in the office of Noggle, Prichard & Prichard, to whose business I succeeded ; they have remained in said office since made ; I have had charge of them for some years, and am the agent and

attorney for the plaintiff, and no part of said note or mortgage has been paid.' J. B. King, for the defendant *Ashcraft*, testified as follows : ' I know where the premises are situated described in the answer of said *Ashcraft*. I knew the premises in 1850. There was a house located on the lot about where it is marked on this plat, occupied by Patrick Burns and Moses Buckley.'" [The map printed with the bill of exceptions shows the site of said house in the *south-east* half of lot 1, and upon the part thereof owned by A. W. Cary.] Whereupon the court found as facts : 1. That the defendant *May* executed, for a good and sufficient consideration, the note and mortgage mentioned in the complaint. 2. That the plaintiff is the owner and holder thereof. 3. That there was a mistake made at the time of the execution of the mortgage, in the description of the premises, and that the parties intended that said description should be " the *south east* half," &c. 4. Due filing of the notice of *lis pendens*. 5. That the premises could be sold in parcels. 6. The amount due and unpaid on the note and mortgage. And upon these facts the court found conclusions of law similar to those found at the previous trial, and rendered judgment accordingly. In June, 1862, the defendant *Annie E. Thayer* moved the court, on a verified petition, to vacate said judgment and finding. The petition stated that the only process ever served upon her in the action was the summons and notice of March 15th, above mentioned ; that she had no knowledge or information of *Ashcraft's* answer, or of any finding or judgment upon the issue raised by it, until April 30th, 1862 ; that she was a *bona fide* purchaser of that part of said lot 1 held by her, and paid a valuable consideration for it, and never knew that there was any mistake in the description of the land intended to be conveyed by the mortgage in suit, or that any one claimed that it was intended to cover any other property than that therein described, until said 30th of April, 1862 ; and that the dwelling house mentioned in *Ashcraft's* answer was never situated on

the premises purchased by her.   The court granted an order staying the plaintiff's proceedings, and on the 16th of June, 1862, vacated the last mentioned judgment, and the finding of law upon which it was based.   In November, 1862, the plaintiff moved the court for " a finding of law and a judgment of foreclosure and sale in said action, in favor of the plaintiff and against the defendants; which motion was then and there, by agreement and stipulation on the part of the defendants and each and all of them, argued by the counsel for the respective parties;" and thereupon the court found conclusions of law and rendered a judgment similar, respectively, to those which had been set aside.   The defendant *Annie E. Thayer* filed exceptions to the finding and judgment, and appealed.

*Bennett, Cassoday & Gibbs*, for appellant, contended, among other things,   1. That there were no pleadings on which the judgment could be based.   So far as it affects the appellant, the case must be considered as though there were no answer. The litigation between *Ashcraft* and the plaintiff could affect only *their* interests.   There were no rules of pleading which would allow the appellant to take issue with *Ashcraft's* answer.   The only way in which *Ashcraft* could have the equities between himself and the other defendants determined, was by cross bill or complaint against the plaintiff and the other defendants.   Van Santv. Eq. Pr., 223–227; *Tracy vs. N. Y. Steam Faucet Co.*, 1 E. D. Smith, 350; *Woodworth v. Bellows*, 4 How., 24; *McCrackan v. Ware*, 3 Sandf. (S. C.), 688. It was not a case for a counter-claim, which is defined to be a cross demand existing in favor of a defendant and *against the plaintiff*, between whom a several judgment might be had in the action.   R. S., ch. 125, sec. 11; 1 Van Santv. Eq. Pr., 210–14; Howard's N. Y. Code, sec. 150.   Again, the question whether the plaintiff had a valid lien under his mortgage, on that part of the *south-east* half of the lot which was not included in the *south-west* half, was a new question, foreign to the case made in the complaint, and could not be raised by *Ashcraft* even by

a cross bill, but only by the plaintiff himself, and by means of a supplemental complaint. Story's Eq. Pl., secs. 391, 392, 396–401; 2 Barb. Ch. Pr., 127–136. Counsel further contended that the order setting aside the second judgment, not having been appealed from, was a final determination of the case, and that the judgment could not be re-instated on a mere motion.

*Chas. G. Williams*, for respondent:

1. At the time judgment was rendered the appellant had appeared in the case, and knew the state of the proceedings—the issue to be tried and the relief asked, yet made no attempt to defend the same, but suffered judgment to be entered against her by default. She is estopped. *Baxter vs. Arnold*, 9 How. Pr. R., 445; *Hewitt vs. Howell*, 8 id., 346, *Marquat vs. Marquat*, 2 Kern., 341. 2. The matters included in the judgment appealed from are not *res adjudicatœ* by virtue of the order vacating the second judgment, &c., because the finding of fact still remained, and required some finding of law and judgment to carry it into effect. 3. The plaintiff should not be compelled to abandon his *record* cause of action for a cause of action resting in *parol*, until the latter had been established by proof and the judgment of the court; so that he could not be required to amend his complaint and adopt *Ashcraft's* theory of the case before judgment. 4. The appellant should have got leave to put in her answer when she ascertained the issue to be tried, because the matters set up in her petition would, when proven, "constitute a defense." 5. When the appellant made default after personal service, she did so at her peril, and judgment rendered in the action without service of the amended pleadings upon her, was regular.

*By the Court*, DIXON, C. J. This is a most anomalous case, in some respects obscure and almost unintelligible. Up to the order setting aside the judgment of May 17th upon the petition of the appellant, the proceedings are easily understood; but

after that we are in some doubt as to what the parties intended. It appears that a motion was then made by the plaintiff's attorneys for a finding of law and judgment in favor of the plaintiff, upon the finding of facts theretofore filed in the action; that this motion was brought to argument " by an agreement and stipulation on the part of the defendants and each and all of them; " and that thereupon the present judgment, which is the third and last rendered in the cause, was pronounced and entered. This judgment is in substance the very same as that just set aside upon the petition of the appellant. We are at some loss to determine what effect is to be given to the " agreement and stipulation " which is so industriously noted in the record. The appellant had not yet answered. She had had no opportunity of contesting the matters which so seriously affected her interests. She had not been heard on the question of mistake in the execution of the mortgage, nor whether she was a *bona fide* holder for value of that part of the premises claimed by her; and it seems to us that she could not be, upon the motion. An answer and trial of the facts were requisite for that purpose. It was for that that the judgment was set aside. So far the court was clearly right; for no one will contend that the mortgage could be reformed, materially changing its terms and the cause of action stated in the complaint, and including, instead of a small fraction, the whole of the appellant's lot, without giving her the privilege of being heard. This principle is familiar and needs no discussion; and the only question with us is, whether the appellant has waived her right. If the intention of the stipulation was to submit the cause finally to the court without answer or proof on the part of the appellant, then I doubt whether there is anything in the exceptions, multitudinous and reiterated as they are, for which the judgment should be reversed. The bill does not purport to contain the whole evidence. The mortgage itself is not set out; and we are not informed whether it contains the words alleged in the answer of the

defendant *Ashcraft* to have been left out of the complaint. If on the other hand we regard the stipulation as merely that the motion might be brought on, a thing which the plaintiff might have done without the stipulation, and which makes it seem almost useless, then I think the exceptions sufficient, and the appellant entitled to a reversal. The motion then differs very little from an application to reinstate the judgment last set aside, which was as clearly wrong, as the order setting it aside was right. The appellant was not bound by the previous finding of facts. This was, in strictness, the effect of the stipulation as set forth in the record, and we are inclined to it, especially as such construction favors the justice of the case by giving the appellant her day in court, of which she would otherwise be deprived.

Let the judgment be reversed, and the cause remanded for further proceedings according to law.